**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                )
**KEVIN HAIRSTON,**              )
                                )
         **Plaintiff,**          )
                                )
         **v.**                  )     **Civil Action No. 08-1531 (RWR)**
                                )
**ROBERT C. TAPELLA,**           )
                                )
         **Defendant.**          )
_____)


<u>**MEMORANDUM OPINION**</u>

        Plaintiff Kevin Hairston filed a discrimination complaint
under Title VII of the Civil Rights Act of 1964, alleging that
his employer, the Government Printing Office ("GPO"), failed to
promote him because of his race and retaliated against him for
complaining about it.  The GPO moved to dismiss the complaint
under Federal Rule of Civil Procedure 12(b)(1) for lack of
jurisdiction due to Hairston's failure to timely exhaust his
administrative remedies, and Rule 12(b)(6) for failure to state a
claim.  Because there are disputed material facts about
Hairston's timeliness in complaining about his non-promotions,
the GPO's motion to dismiss Hairston's first cause of action,
treated as a motion for summary judgment, has been denied.
However, because Hairston failed to exhaust his administrative
remedies for his claim of retaliation, the GPO's motion to
dismiss Hairston's second cause of action has been granted.

## BACKGROUND

Kevin Hairston, a black man, has worked for the GPO since 1987.  He currently works in the Press Division of the GPO's Production Department.  (Compl. ¶¶ 4-7.)  Hairston has served in his current role as Offset Pressperson for five years and works the night shift.  (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 1, 3; Decl. of Kevin Hairston, Jan. 30, 2009 ("First Decl.") ¶ 2.)

On August 14, 2006, the GPO posted vacancy announcement No. 06-476 for the position of Second Offset Pressperson ("first posting"), a position open only to permanent GPO employees. (Compl. ¶¶ 11-12; Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") ¶ 2.)  Hairston applied for the position listed in the first posting on August 24, 2006, and alleges that he was selected for the position in September 2006.  (Compl. ¶¶ 13, 16-17; First Decl. ¶ 11 n.1).  However, on September 6, 2006, the GPO withdrew the first posting before filling the position. (Def.'s Mem. ¶ 3; Compl. ¶ 18.)  Hairston alleges that on October 5, 2006, he contacted the GPO's equal employment opportunity office ("EEO") alleging that he had been denied the promotion to Second Offset Pressperson on account of his race ("first complaint").  (Compl. ¶ 25.)  Hairston alleges that an EEO counselor he met with named Teri Brown advised him to withhold filing a formal complaint until he had more evidence of

discrimination beyond his mere non-promotion.  Because of the EEO
counselor's advice, Hairston took no further action.  (Pl.'s
Opp'n at 3-4; First Decl. ¶¶ 9-10.)

The GPO re-posted the Second Offset Pressperson announcement
("second posting") as vacancy announcement No. 06-554 on
October 13, 2006, but this time opened applications to non-GPO
employees.  (Compl ¶¶ 26-27.)  Hairston alleges that
Superintendent George Domarasky stated that the GPO re-posted the
position because "[the GPO] had no qualified applications on the
last posting."  (Compl. ¶ 24.)  Hairston re-applied in response
to the second posting and received confirmation of his
qualification for the position on December 4, 2006.  (Compl.
¶¶ 29-30.)  While the GPO did not interview candidates for the
first posting, the GPO interviewed applicants for the second
posting.  The GPO interviewed Hairston on December 27, 2006.
(Compl. ¶¶ 31-32.)  In January 2007, Hairston found out that he
had not been selected for the position of Second Offset
Pressperson, but Hairston did not know if the GPO had left the
position vacant, as it did after withdrawing the first posting.
(Pl.'s Opp'n at 4; First Decl. ¶ 10.)

On March 19, 2007, the GPO hired as a Second Offset
Pressperson Douglas Davis, a white man with no prior GPO
experience.  (Compl. ¶ 34; Def.'s Mem. ¶ 4.)  Hairston alleges
that he did not find out that the second posting vacancy had been

-4-

filled until June 14, 2007, when a co-worker informed him that a
white person had been hired for the position.  (Compl ¶ 34; Pl.'s
Opp'n at 5; First Decl. ¶ 12.)  Hairston returned to the EEO on
June 21, 2007 alleging again that the GPO had denied him a
promotion because of his race ("second complaint").  (Compl.
¶ 39; Pl.'s Opp'n 5)

Hairston alleges that shortly after he complained to the EEO
in June 2007, his direct supervisor, assistant foreman David
Eigenbrode, began a course of retaliatory conduct that included
threatened disciplinary actions, degrading treatment in front of
co-workers, unwanted bodily contact, and "disparaging comments."
(Compl. ¶¶ 40-43; Pl.'s Opp'n at 6.)  After no resolution was
reached in the informal EEO process, Hairston filed a formal
complaint on August 3, 2007 with the EEO alleging race
discrimination.  (Compl. ¶ 44.)  Hairston's complaint did not
allege retaliation.  (Pl.'s Opp'n at 7.)  Rather, Hairston
contends that he did nothing in response to Eigenbrode's alleged
retaliatory conduct, other than make an initial complaint to
Eigenbrode's supervisor, because Hairston worried that Eigenbrode
would downgrade his work evaluations "or otherwise jeopardiz[e]
his chances of receiving a promotion in the future . . . ."
(Id.; First Decl. ¶¶ 20-21.)

Hairston brought this action under 42 U.S.C. §§ 2000e-16(a)
and 2000e-3(a) alleging racial discrimination and retaliation.

The GPO has moved to dismiss both of Hairston's claims under Rules 12(b)(1) and 12(b)(6), arguing that Hairston failed to exhaust his administrative remedies by seeking EEO counseling within 45 days of the alleged discriminatory and retaliatory acts, and because Hairston did not allege retaliation in the formal EEO complaint he submitted on August 3, 2007.  (Def.'s Mem. at 1, 4.)  Hairston responded by contending that the time limit on his first complaint should be tolled because Hairston relied on the advice of an EEO counselor in not pursuing the claim further.  (Pl.'s Opp'n at 9-13.)  Hairston also argued that he timely filed his second complaint because the action did not accrue until he discovered that the position had been filled by a white man without prior GPO experience, and that his retaliation claim is appropriately before this court because courts do not require amendments to EEO complaints to allege retaliation that occurs after filing an initial EEO complaint.  In the alternative, Hairston sought a dismissal without prejudice in hopes of re-filing his case, albeit with a much broader scope.[1]

---

[1] Hairston moved for leave to file a surreply, arguing that the GPO's Reply "raises more questions than it answers."  (Pl.'s Mem. for Leave to File Surreply ("Mem. for Surreply") at 1.)  Although motions for leave to file a surreply are not favored, they are granted when a reply is filed leaving "a party . . . 'unable to contest matters presented to the court for the first time.'"  Ben-Kotel v. Howard Univ., 319 F.3d 532, 536 (D.C. Cir. 2003) (quoting Lewis v. Rumsfeld, 154 F. Supp. 2d 56, 61 (D.D.C. 2001)).  Courts may be inclined to grant leave to file a surreply when it responds to new factual allegations "of substantial import."  Tnaib v. Document Techs., LLC, 450 F. Supp. 2d 87, 89

-6-

## DISCUSSION

"[M]otions to dismiss for failure to exhaust administrative remedies are . . . appropriately analyzed under Rule 12(b)(6)." Hopkins v. Whipple, 630 F. Supp. 2d 33, 40 (D.D.C. 2009)(quoting Marshall v. Honeywell Tech. Solutions, Inc., 536 F. Supp. 2d 59, 64 (D.D.C. 2008) and Hazel v. Wash. Metro Transit Auth., Civil Action No. 02-1375 (RWR), 2006 WL 3623693, at *3 (D.D.C. December 4, 2006)); see also Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006) ("[W]hen Congress does not rank a statutory limitation on [the statute's] coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character."); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997) ("The administrative time limits created by the EEOC erect no jurisdictional bars to bringing suit."). "Moreover, '[b]ecause untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it.'" Battle v. Rubin, 121 F. Supp. 2d 4, 7 (D.D.C. 2000) (quoting Bowden, 106 F.3d at 437).

---

n.3 (D.D.C. 2006).  The GPO attached to its reply a declaration from EEO Counselor Barbara Utz contesting the alleged content of conversations at Hairston's initial EEO meetings.  (See Def.'s Reply Ex. 1 ("Utz Decl.").)  The factual allegations contained in the declaration raised, for the first time, factual disputes regarding whether the EEO advised Hairston against filing a complaint in October 2006.  Therefore, Hairston's motion for leave to file a surreply has been granted.

-7-

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  However, "when 'matters outside the pleadings are presented to and not excluded by the court' on a motion to dismiss under Rule 12(b)(6), 'the motion must be treated as one for summary judgment[.]'" Highland Renovation Corp. v. Hanover Ins. Group, 620 F. Supp. 2d 79, 82 (D.D.C. 2009) (quoting Fed. R. Civ. P. 12(d)).  In particular, "where both parties submit material outside the pleadings and 'the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings and the issues involved are discrete' legal issues, the court may convert the motion to a motion for summary judgment 'without providing notice or the opportunity for discovery to the parties.'" Highland Renovation Corp., 620 F. Supp. 2d at 82 (quoting Tunica-Biloxi Tribe of La. v. United States, 577 F. Supp. 2d 382, 405 (D.D.C. 2008) and Smith v. United States, 518 F. Supp. 2d 139, 145, 155 (D.D.C. 2007)).

Summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a

matter of law.  Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing Fed. R. Civ. P. 56 (c) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).  "In considering a motion for summary judgment, [a court is to draw] all 'justifiable inferences' from the evidence ... in favor of the nonmovant."  Cruz-Packer v. Dist. of Columbia, 539 F. Supp. 2d 181, 189 (D.D.C. 2008) (quoting Anderson, 477 U.S. at 255); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "The relevant inquiry 'is the threshold inquiry of determining whether there is a need for a trial - - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Single Stick, Inc. v. Johanns, 601 F. Supp. 2d 307, 312 (D.D.C. 2009) (quoting Anderson, 477 U.S. at 250).  A genuine issue is present where the "evidence is such that a reasonable jury could return a verdict for the non-moving party," in contrast to a situation where the evidence is "so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 248, 252.

"Before filing a Title VII suit, a federal employee must timely pursue [his] administrative remedies, following the requirements set forth in 29 C.F.R. § 1614."  Hines v. Bair, 594 F. Supp. 2d 17, 22 (D.D.C. 2009).  "If a plaintiff believes that [he] has been unlawfully discriminated against, '[he] must

-9-

consult an EEO counselor in an effort to resolve the situation informally." Id. (citing 29 C.F.R. § 1614.105(a)). This contact with the EEO counselor must occur within 45 days of the alleged discriminatory incident. Id. (citing 29 C.F.R. § 1614.105(a)(1)). "The agency or the Commission shall extend the 45-day time limit . . . when the individual shows . . . that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred . . . ." Id. (citing 29 C.F.R. § 1614.105(a)(2)). If informal counseling proves fruitless, the employee then has 15 days from when the employee receives notice that counseling has ended to file a written complaint. See Chandler v. Bernanke, 531 F. Supp. 2d 193, 196 (D.D.C. 2008); 29 C.F.R. § 1614.106(b). However, "the time period for filing a charge remains subject to application of equitable doctrines such as waiver, estoppel, and tolling." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)). After filing a written complaint, the employee may file a civil action once the agency issues an adverse final decision or 180 days elapse without a decision, whichever happens first. See 42 U.S.C. § 2000e-16(c).

The procedural requirements governing a plaintiff's right to bring a Title VII claim in court are not mere technicalities, because "it is part and parcel of the Congressional design to

vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment." Patterson v. Johnson, 391 F. Supp. 2d 140, 145 (D.D.C. 2006).  However, Title VII's purpose is remedial in nature.  While time limits are imposed principally to insure that employers receive notice of complaints and have an opportunity to resolve the situation before litigation is filed, the time limits are "subject to waiver, estoppel, and equitable tolling when equity so requires." See Morgan, 536 U.S. at 121 (quoting Zipes, 455 U.S. at 398); see also  29 C.F.R. § 1613.214(a)(4) ("The agency shall extend the time limits in this section when the complainant shows that he/she was not notified of the time limits and was not otherwise aware of them . . . or for other reasons considered sufficient by the agency.").  The equitable power to toll a limitation period will be exercised in "carefully circumscribed instances." Smith-Haynie v. District of Columbia, 155 F.3d 575, 579-80 (D.C. Cir. 1998) (quotation omitted).  "[E]quitable principles favor tolling where, for example, a defendant engaged in affirmative misconduct, or misled a plaintiff about the running of a limitations period." Washington v. Wash. Metro. Area Transit Auth, 160 F.3d 750, 752-53 (D.C. Cir. 1998) (quotations and bracket omitted); see also White v. Geithner, 602 F. Supp. 2d 35, 38 (D.D.C. 2009) (stating that a court exercises its equitable

-11-

power to toll Title VII's limitation periods where a plaintiff comes "forward with specific proof of an employer's affirmative acts or misleading statements" that prevented the plaintiff from filing an EEO complaint within the limitation period).

I.   NON-PROMOTION

Hairston's complaint alleges that the GPO unlawfully discriminated against him based on his race in violation of Title VII by repeatedly denying him the promotion to Second Offset Pressperson.  It alleges two discrete acts of discrimination: one act that occurred on September 6, 2006, the date that the GPO first purportedly cancelled Hairston's promotion to the Second Offset Press Person Position, and one act that occurred on March 19, 2007, when Davis was hired for the second posting of the Second Offset Press Person position, an act that Hairston alleges he learned of on June 14, 2007.  (Compl. ¶¶ 47-49.)  Each instance of an employer's failure to promote is a discrete act that constitutes an individually actionable "unlawful employment practice."  Morgan, 536 U.S. at 114.  Although Hairston subsumes both non-promotions under a single count of the complaint alleging that the GPO's discrimination is on-going and continuous (Compl. ¶ 49), "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," unless equitable principles of tolling apply.  Morgan, 536 U.S. at 113-14.  Thus, Hairston can maintain

-12-

his discrimination count if he timely filed his EEO complaint and exhausted administrative remedies for either of the non-promotions, or if the circumstances surrounding either non-promotion warrants equitable tolling.  See Morgan, 536 U.S. at 113-14; Battle, 121 F. Supp. 2d at 6-7 (recognizing the "general rule" that "parties 'must exhaust prescribed administrative remedies before seeking relief from federal courts'") (quoting McCarthy v. Madigan, 503 U.S. 140, 144-45 (1992)).

The GPO argued that the first cause of action should be dismissed as untimely because Hairston failed to timely exhaust his administrative remedies regarding either of the underlying non-promotions.  (Def.'s Mem. at 8-9.)  The GPO alleged that Hairston failed to seek timely EEO counseling after the September 6, 2006 cancellation of the first posting (Def.'s Mem. at 8), and that the circumstances of Hairston's complaint do not warrant an equitable extension of the administrative time limits. (Def.'s Mem. at 10.)  Hairston responded that his contact with the EEO after the cancellation of the first posting satisfied Title VII's requirements, and in the alternative, that his "lack of knowledge of facts critical to his discrimination complaint," taken together with EEO Counselor Brown's advice that he delay any complaint, warrant tolling the statute of limitations. (Pl.'s Opp'n at 10.)

-13-

On October 5, 2006, Hairston met with an EEO counselor regarding the first posting, twenty-nine days after the GPO cancelled the first posting on September 6, 2006. (Compl. ¶¶ 18, 25.) Thus, Hairston "initiate[d] contact" with the EEO within 45 days "of the matter alleged" sufficient to satisfy the first Title VII deadline. 29 C.F.R. § 1614.105(a)(1). On October 27, 2006, Hairston received and signed a notice informing him that his complaint had not been resolved and that he could file a formal complaint of discrimination within 15 calendar days of receiving the notice. (Def.'s Reply Ex. E.) However, Hairston failed to file a formal complaint within the 15 days allotted by EEO regulations. (Pl.'s Surreply at 1; Def.'s Reply at 7.) Instead, Hairston took no further action regarding the first posting until he initiated the present action. Thus, Hairston did not meet the deadline for filing a formal complaint of discrimination regarding that posting. See 29 C.F.R. § 1614.106(b). As such, the GPO met its initial burden of proving that Hairston did not exhaust his administrative remedies regarding the revocation of the first posting within the time-frame required by Title VII.

Hairston argued, though, that the deadline for filing a formal complaint regarding his non-promotion for the first posting should be tolled because Brown allegedly told him in October 2006 that he needed additional proof beyond his mere non-

-14-

promotion in order to file a claim, and that Hairston relied on
that advice when he did not file a claim within the 15 days
required by statute.  (First Decl. ¶¶ 9-10.)  While Hairston's
original declaration does not specify which EEO counselors he met
with on which days, it is clear that Hairston contacted the EEO
on September 28, 2006, October 5, 2006, and October 27, 2006.
(Compl. ¶ 25; First Decl. ¶ 8; Utz Decl. ¶¶ 3-4.)  The GPO
contested Hairston's claim of misinformation through the
declaration of Barbara Utz, who states that she met with Hairston
on October 5, 2006 and October 27, 2006, and that she "never made
any statement(s) for the purpose of discouraging [Hairston] from
pursuing his complaint."  (Utz Decl. ¶¶ 4-5.)  However, while the
checklist from Hairston's October 5, 2006 meeting bears Utz's
signature (Pl.'s Opp'n Ex. B), Utz's declaration does not refute
that Hairston met with Brown.  Additionally, the GPO attached to
its motion a right to sue letter issued by Brown.  (Def.'s Mem.
Ex. C.)  Taken together, the evidence could support the inference
that Hairston met with Brown.

The GPO also insisted Hairston was not misled and the
deadlines for Hairston's administrative process should not be
tolled since Hairston signed the notice of the right to file
within 15 days a formal complaint.  (Def.'s Reply 6-7.)  While
the notice demonstrates that Hairston was made aware of the 15-
day deadline to submit an administrative complaint, it does not

-15-

contradict Hairston's contention that he reasonably relied on oral representations made by Brown that actively discouraged him from filing a claim, and courts may equitably toll a limitations period when a plaintiff is misled "by a government official's advice upon which" the plaintiff relied.  Bowden, 106 F.3d at 438.  Accepting Hairston's allegations as true, see Trudeau, 456 F.3d at 193, Hairston has made a plausible assertion that he met with Brown, an EEO counselor, who advised him against filing a formal complaint.  As such, Hairston has alleged sufficient facts to create a triable issue of fact bearing on whether the deadline for filing a complaint about his first non-promotion should be equitably tolled.  Summary judgment on that non-promotion, then, is not available.

The GPO argued that Hairston's allegation of discrimination regarding his non-promotion for the second posting should also be dismissed for failure to timely exhaust administrative remedies, insisting that the 45-day time period for contacting an EEO counselor began to run when Hairston learned that he was not selected for the position in January 2007, not when Hairston learned that Davis was selected for the position.  (Def.'s Mem. at 8.)  The parties do not dispute that Hairston was notified of his non-selection in January 2007, that Davis's hiring became effective March 19, 2007, or that Hairston contacted the EEO on June 21, 2007.  (Def.'s Mem. at ¶¶ 4-5; First Decl. ¶¶ 10, 13,

14.)  Rather, the parties dispute when the clock started on the 45-day deadline.

Section 1614.105(a)(1) makes it clear that employees have 45 days from the occurrence of "the matter alleged to be discriminatory" to initiate contact with an EEO counselor.  29 C.F.R. § 1614.105(a)(1); see also Morgan, 536 U.S. at 109-110 (analyzing when an unlawful employment practice 'occurs' for purposes of Title VII's timing provisions and holding that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'").  In Stewart v. Ashcroft, 352 F.3d 422 (D.C. Cir. 2003), the court of appeals held that an allegedly discriminatory non-promotion occurs on the date that the selected applicant assumes her or his new position.  Id. at 425.  In Stewart, the plaintiff initiated EEO procedures on August 12, 1998, while the promoted employee assumed his new role on February 3, 1998 — - well over 100 days earlier.  Id.  Because the promotion became effective on February 3, 1998, the court of appeals deemed the complaint untimely.  Id.; see also Armstrong v. Jackson, Civil Action No. 05-75 (JDB), 2006 WL 2024975 at *4 (D.D.C. July 17, 2006) (holding that the date of discrimination is the date on which a decision not to hire a plaintiff becomes effective).

Here, Davis' hiring became effective March 19, 2007.  (First Decl. ¶ 13; Def.'s Mem. Ex. B.)  As such, Hairston had until

May 3, 2007 to file a timely complaint under § 1614.105(a)(1).

However, Hairston did not contact the EEO regarding the second

posting until June 21, 2007, some 94 days after the allegedly

discriminatory act happened, and he failed to meet the 45-day

deadline imposed by § 1614.105(a)(1).

Hairston argued that the time limit should be tolled under

§ 1614.105(a)(2) because he was unaware before June 14, 2007 that

"another individual had been selected for the job, let alone that

the individual was a Caucasian applicant from outside [the] GPO."

(Pl.'s Opp'n at 5.)   Under § 1614.105(a)(2), courts may treat

otherwise untimely complaints as timely if the employee "did not

know and reasonably should not have known that the discriminatory

matter or personnel action occurred."   This statutory language

recognizes that "[a]n overly technical approach [to Title VII

claims] would improperly impede the goal of making federal

employment free from proscribed discrimination."   Loe v. Heckler,

768 F.2d 409, 417 (D.C. Cir. 1985).

Here, Hairston's allegations regarding the advice he relied

upon in not filing a timely complaint without more evidence of

discrimination could, if believed, justify under § 1614.105(a)(2)

a tolled deadline for making contact with the EEO counselor

regarding the second posting.   Hairston could have reasonably

believed that Brown's assertion that he needed more evidence of

discrimination aside from just his non-promotion meant that he

-18-

needed to wait to assert any other grievance about any non-promotion until he knew who had been hired for the position. Hairston works in a massive building with thousands of co-workers (Pl.'s Opp'n at 2), and he did not know the Second Offset Pressperson position had been filled when Davis assumed the role on March 19, 2007.  (First Decl. ¶ 13).  Yet, Hairston quickly contacted the EEO just one week after learning of Davis' promotion.  (Id. ¶ 14.)  Here, too, Hairston raised a genuine issue of material fact bearing on whether the deadline for Hairston to have contacted the EEO should be tolled.  The GPO's motion to dismiss Hairston's first cause of action, then, converted to a motion for summary judgment, was denied.

II. RETALIATION

Title VII "prohibit[s] the federal government from retaliating against employees who complain of employment discrimination." Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009) (citing Montgomery v. Chao, 546 F.3d 703, 706 (D.C. Cir. 2008)).  "It is well-established that a federal employee may assert a Title VII claim in federal court only after a timely complaint has been presented to the agency involved." Nurriddin v. Goldin, 382 F. Supp. 2d 79, 92 (D.D.C. 2005) (citations omitted).  There is some dispute in this circuit about whether a federal employee needs to exhaust his administrative remedies before filing a claim of retaliation.  While the D.C. Circuit

"has declined to weigh in on the issue," Lewis v. Dist. of
Columbia, 535 F. Supp. 2d 1, 7 (D.D.C. 2008) (citing Weber v.
Battista, 494 F.3d 179, 183-84 (D.C. Cir. 2007)), one view is
that "Morgan has, on the whole, been understood to . . . bar
[unexhausted claims of retaliation based on] discrete acts
occurring after the time period, after the filing of an
administrative complaint, when a plaintiff does not file a new
complaint or amend the old complaint but instead presents these
acts for the first time in federal court." Romero-Ostolaza v.
Ridge, 370 F. Supp. 2d 139, 149 (D.D.C. 2005); see also Adams v.
Mineta, Civil Action No. 04-856 (RBW), 2006 WL 367895, at *3-5
(D.D.C. February 16, 2006) (entering judgment in favor of the
defendant where a plaintiff failed to file an EEO complaint
regarding her claims of retaliation, and explicitly rejecting the
argument that "a claimant need not exhaust her administrative
remedies for a claim based on retaliation when that retaliation
claim arises after an administrative complaint has already been
filed"). A more recent view is that acts of alleged retaliation
occurring after an EEO charge is filed need not be separately
exhausted where they necessarily would have come within the
"scope of any investigation that reasonably could have been
expected to result from [the] initial [EEO] charge[.]" Hazel,
2006 WL 3623693, at *8 (internal quotation and citation omitted);
see also Lewis, 535 F. Supp. 2d at 7 (holding that a court cannot

-20-

entertain claims arising from incidents omitted from an EEO complaint unless those incidents were within the scope of the investigation that would have followed the initial EEO charge); Pierce v. Mansfield, 530 F. Supp. 2d 146, 154 n.8 (D.D.C. 2008) (holding that a plaintiff "need not exhaust his administrative remedies to bring a retaliation claim"); Turner v. Dist. of Columbia, 383 F. Supp. 2d 157, 178 n.11 (D.D.C. 2005) (stating that "[t]he proposition that exhaustion is unnecessary for retaliation claims stems, in part, however, from the fear that filing a separate charge will result in more retaliation, and that a retaliation claim is necessarily related to the underlying charge").

Here, not only did Hairston make no attempt to contact the EEO regarding his claim of retaliation, but his retaliation claim would not have been within the scope of the investigation of Hairston's initial claims of discriminatory non-promotion. See Lewis, 535 F. Supp. 2d at 7. The supervisor who purportedly retaliated against Hairston was not alleged to have been involved in the decision about promotion. The GPO did not receive notice of Hairston's distinct retaliation claim until Hairston filed this action, which contravenes the purpose of Title VII's deadlines. See Morgan, 536 U.S. at 121 (calling "prompt notice to the employer" the "particular purpose" of Title VII's filing requirements) (quoting Zipes, 455 U.S. at 398). Therefore,

-21-

Hairston's retaliation claim was dismissed for failure to exhaust administrative remedies.

### CONCLUSION

Material facts are in dispute regarding Hairston's timeliness in complaining about his non-promotions, but his retaliation complaint was unexhausted.  Therefore, the defendant's motion [5] to dismiss, treated in part as a motion for summary judgment, has been GRANTED in part and DENIED in part.  Summary judgment has been denied as to Hairston's first cause of action, and Hairston's second cause of action was dismissed.  Further, Hairston's motion [9] to file a surreply was GRANTED.

SIGNED this 21st  day of October, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge