UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
KEVIN HAIRSTON,                )
                               )
       Plaintiff,              )
                               )
       v.                      )   Civil Action No. 08-1531 (RWR)
                               )
WILLIAM J. BOARDMAN,           )
                               )
       Defendant.              )
_____)
```

### MEMORANDUM OPINION

Plaintiff Kevin Hairston has sued the Public Printer[1] of the United States Government Printing Office ("GPO"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(a), alleging that the GPO failed to promote him because of his race, and denied him training because of his race and as retaliation for prior EEO activity. The GPO has moved for summary judgment. Because Hairston has neither rebutted all of the non-discriminatory reasons the GPO proffered for not promoting him or sending him to training, nor shown that not sending him to training was an actionable adverse employment action, the defendant's motion for summary judgment will be granted.

BACKGROUND

Hairston is a black employee of the GPO who applied in August 2006 for a promotion to a Second Offset Pressperson

---

[1] Public Printer William Boardman is substituted as the defendant under Federal Rule of Civil Procedure 29(d).

position advertised in vacancy announcement ("VA") 06-476.  The position was open to GPO employees only.  (Am. Compl. ¶¶ 1, 4, 11-13; Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J ("Def.'s Mem."), Def.'s Stmt. of Mat. Facts ("Def.'s Stmt.") ¶¶ 1, 7, 9.)  A Second Offset Pressperson is responsible for operating and maintaining five-color and six-color printing presses to produce "postal cards, passports, and other security and quality work[.]"  (Def.'s Mem. at 11; Def.'s Stmt. ¶ 8 & Ex. 3.)

   Hairston was the only one of the two applicants for the position deemed "qualified" by the selecting official, Earl Hayward, who believed that Hairston could learn the duties of the position with training.  (Def.'s Stmt. ¶ 10.)  The concurring official, George Domarsky, agreed with Hayward's assessment, and Hayward told Hairston that he was selected for the position. (Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), Ex. 5 ("Hairston Decl.") ¶ 42.)  However, Domarsky's supervisor, Jeff Bernazzoli, determined that the Second Offset Pressperson position was not a training position. (Def.'s Notice of Errata, Ex. 2 ("Bernazzoli Dep. Excerpt 3") at 36).  Bernazzoli sought someone who could immediately operate the equipment, and Domarsky said Hairston could not do so.  (Id. at 35, 38.)  Bernazzoli consulted with Marvin Verter who had supervised Hairston.  (Def.'s Mem., Ex. 4 ("Bernazzoli Dep.

-3-

Excerpt 1") at 35; Pl.'s Opp'n, Ex. 26 ("Verter Dep. Excerpt 2") at 30.)[2]  Verter said that Hairston did not have the experience or training to operate the equipment that the Second Offset Person Pressperson had to operate.  (Bernazzoli Dep. Excerpt 1 at 35-36; Verter Dep. Excerpt 2 at 30.)  Thereafter, Bernazzoli had the vacancy posting cancelled.  (Def.'s Stmt. ¶ 14.)

At Domarsky's request, the GPO's human resources department re-advertised the Second Offset Pressperson position in VA 06-554.  It sought applicants familiar with multicolor printing presses, and was open to applicants who were not GPO employees.  (Def.'s Stmt. ¶¶ 14, 17.)  The GPO interviewed candidates, asking each the same set of questions related to working on multicolor presses, and scoring the answers.  Hairston failed to answer some of the questions asked during the interview.  (Id. ¶¶ 18-19.)  Of the seven applicants who were interviewed, Hairston's score, 57 out of a possible 105 points, was the lowest.  The interviewee with the highest score, a white candidate named Douglas Davis who had 10 years of experience working with multicolor presses, scored 101.  (Id. ¶ 20.)  Davis was eventually selected for the Second Offset Pressperson position, and was hired effective in 2007.  (Id. ¶ 22.)

---

[2] Bernazzoli said Verter had been Hairston's immediate supervisor, but Verter said he had supervised Hairston indirectly.  Cf. Bernazzoli Dep. Excerpt 1 at 35 with Verter Dep. Excerpt 2 at 19.

-4-

After Hairston discovered that the position advertised in VA 06-554 had been filled by a white candidate, he informally and formally complained to the GPO EEO office that the GPO had engaged in race discrimination by not promoting him and instead hiring a white candidate.  (Am. Compl. ¶¶ 34, 39, 44; Def.'s Stmt. ¶ 23; Def.'s Mem., Ex. 20 at 2.)  Hairston alleges that following his contact with the EEO office, he was subjected to retaliatory conduct by his supervisor, assistant foreman David Eigenbrode.  (Am. Compl. ¶¶ 2, 42.)  Hairston further asserts that even though he was not promoted to the Second Offset Pressperson position, the GPO asked him to temporarily fill that position for nearly two months in October and November 2007, and did not compensate him for the additional workload and responsibility.  (Id. ¶¶ 37-38.)  In January 2009, Hairston filed his second formal complaint with the GPO EEO office alleging both the original discriminatory non-promotion and retaliation.  (Id. ¶ 57.)

According to Hairston, in March 2009, he learned that the GPO was sending presspersons to Kennesaw, Georgia, for training on two-color and four-color presses.  Hairston alleges that he was not timely informed of this opportunity, and was not invited to participate.  (Am. Compl. ¶¶ 63-64; Pl.'s Opp'n at 8.)  Presspersons interested in the opportunity were chosen on the basis of information taken from surveys which had been

-5-

distributed in 2008 by a union representative named Carter Daniel, at the direction of Douglas Davis. (Am. Compl. ¶¶ 65-69; Def.'s Mem., Ex. 22.) Hairston alleges that he had never spoken to Daniel about training, and that Daniel falsified survey results to reflect a lack of interest by Hairston in the Georgia training opportunity. (Pl.'s Opp'n at 9.) Hairston does not dispute, though, that he signed a training survey form on which he made no request for this training, or that those above Daniel who decided which employees to send to the training understood that Hairston had not requested this training. (Def.'s Stmt. ¶ 27; Pl.'s Resp. to Def.'s Stmt., ¶ 27.)[3]

Hairston initially filed a two-count complaint in this case. The GPO moved to dismiss Hairston's complaint for failure to exhaust administrative remedies. The motion was granted as to Hairston's claim of retaliation by Eigenbrode, and denied as to Hairston's claim of discriminatory non-promotion. See Hairston v. Tapella, 664 F. Supp. 2d 106, 115 (D.D.C. 2009). Hairston later filed an amended Title VII complaint, alleging race discrimination in the first count for the GPO's failure to promote him to the position of Second Offset Pressperson; race

---

[3] Hairston sought counseling at the GPO EEO office and filed a formal administrative complaint alleging that he was denied the Georgia training opportunity due to race discrimination and retaliation. (Am. Compl. ¶¶ 74-75; see Def.'s Stmt. ¶ 29.) Hairston does not dispute that half of the employees selected for the training were black. (Def.'s Stmt. ¶ 27; Pl.'s Resp. to Def.'s Stmt. ¶ 27.)

discrimination in the second count based on the GPO denying Hairston training opportunities; and retaliation in the third count also based on the GPO denying training opportunities to Hairston.  (Am. Compl. ¶¶ 81-90.)

The GPO has moved for summary judgment on all three counts. On the first count, it argues that Hairston failed to rebut the GPO's legitimate, non-discriminatory justification for not promoting him, and that Hairston failed to exhaust his administrative remedies.  On the second and third counts, the GPO argues that Hairston failed to rebut the legitimate, non-discriminatory justification for not sending him to the training in Georgia, and that his alleged injury was not an adverse employment action.  Hairston opposes.

## DISCUSSION

"'Summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law.'"  Fields v. Geithner, 840 F. Supp. 2d 128, 133 (D.D.C. 2012) (quoting Winston v. Clough, 712 F. Supp. 2d 1, 6 (D.D.C. 2010) (citing Fed. R. Civ. P. 56(c))).  "'In considering a motion for summary judgment, [a court is to draw] all justifiable inferences' from the evidence . . . in favor of the nonmovant.'"  Fields, 840 F. Supp. 2d at 133 (quoting Winston, 712 F. Supp. 2d at 6 (internal quotation omitted)).  "The court

must determine 'whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Fields, 840 F. Supp. 2d at 133 (quoting Winston, 712 F. Supp. 2d at 6)). A genuine issue "is present in a case where the 'evidence is such that a reasonable jury could return a verdict for the non-moving party,' a situation separate and distinct from a case where the evidence is 'so one-sided that one party must prevail as a matter of law.'" Dozier-Nix v. Dist. of Columbia, 851 F. Supp. 2d 163, 166 (D.D.C. 2012) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248, 252 (1986)).

I.   FAILURE TO PROMOTE

In his first count, Hairston alleges that the GPO denied him promotions to the Second Offset Pressperson position because of his race. (Am. Compl. ¶¶ 81-83.) The GPO argues that judgment should be entered against Hairston on this claim because the GPO had legitimate, non-discriminatory reasons for cancelling VA 06-476 and for selecting Douglas Davis instead of Hairston for the Second Offset Pressperson position advertised in VA 06-554, and because Hairston failed to exhaust his administrative remedies for his non-selection for the VA 06-554 position. The GPO's principal reason proffered for not promoting Hairston to the VA 06-476 position is that because it faced tight passport

production deadlines from the State Department, Bernazzoli sought candidates with more experience than Hairston had with multicolor presses.  (Def.'s Mem. at 12-13.)  The GPO's proffered reason for hiring Davis is that he had superior relevant experience and was the most highly rated applicant after the applicants were interviewed.  (Def.'s Mem. at 17-18.)  Hairston responded that this action "focuses principally on the discriminatory denial of a promotion in 2006."  (Pl.'s Opp'n at 1.)  Perhaps for that reason, his opposition does not respond to the GPO's assertions that it hired Davis in 2007 due to Davis' superior qualifications,[4] or that Hairston untimely pursued counseling regarding his non-promotion in 2007.  A party opposing a summary judgment motion who does not address an argument advanced in the motion is deemed to have conceded the argument. See Magliore v. Brooks, 844 F. Supp. 2d 38, 43 (D.D.C. 2012) (ruling that the plaintiff conceded an issue "by completely failing to address or rebut the [defendant's] arguments").  To the extent Hairston's first count asserts a discrete claim of non-promotion in 2007, then, the GPO is entitled to judgment on that claim.

---

[4] "[A] plaintiff [alleging disparate treatment for a promotion] must present evidence of 'stark superiority of credentials over those of the successful candidates.'" Fields, 840 F. Supp. 2d at 137 (quoting Hopkins v. Whipple, 630 F. Supp. 2d 33, 39 (internal quotations omitted)); see also Jackson v. Gonzales, 496 F.3d 703, 707 (D.C. Cir. 2007) (stating that "in order to justify an inference of discrimination, the qualifications gap must be great enough to be inherently indicative of discrimination"); McIntyre v. Peters, 460 F. Supp. 2d 125, 136 (D.D.C. 2006).

-9-

As to the 2006 non-promotion, Hairston counters that the GPO's neutral reasons are implausible and that he was qualified to take the position of Second Offset Pressperson. (Pl.'s Opp'n at 18-28.) He notes that he had trained on a mulitcolor press during a six-month apprenticeship that ended in 2004, and that the GPO had assigned him for two months in 2007 to perform the very duties that VA 06-476 covered. (Id. at 18-20.)

"Under Title VII, it is an 'unlawful employment practice' for employers 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Downing v. Tapella, 729 F. Supp. 2d 88, 93 (D.D.C. 2010) (quoting 42 U.S.C. § 2000e-2(a)(1)). A discriminatory "failure to promote an employee constitutes an adverse employment action" reached by Title VII. Kelly v. Lahood, 840 F. Supp. 2d 293, 301 (D.D.C. 2012) (citing Stella v. Mineta, 284 F.3d 135, 146 (D.C. Cir. 2002)). Once an employer has proffered a legitimate, nondiscriminatory reason for the employment actions at issue, a district court examines "'whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason [for an adverse action] was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis.'" Iweala, 634 F. Supp. 2d at 81 (quoting

Adeyemi v. Dist. of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008)).

Here, the GPO has offered legitimate, nondiscriminatory reasons why Hairston was not promoted to the Second Offset Pressperson position in 2006. The GPO explains, among other things, that when Hairston was denied a promotion because VA 06-476 was cancelled, Bernazzoli had sought a candidate who was sufficiently trained for the position already. He believed Hairston did not meet that qualification, as the concurring official and Hairston's former supervisor said that Hairston was not sufficiently trained. Whether Bernazzoli's professional judgment, and that of Domarsky and Verter, was sound is not what Title VII tests. What Title VII forbids is denying a promotion because of one's race. Hairston's own belief that his training and experience before and after VA 06-476 was cancelled qualified him for the position is not enough to show either that Bernazzoli was wrong or was fabricating, or that Bernazzoli's real reason for cancelling the announcement was Hairston's race. Even if Hairston has presented evidence that arguably could reach a jury to show that some of the GPO's other neutral explanations are pretextual masks for prohibited discrimination, he has not produced sufficient evidence for a reasonable jury to find that Bernazzoli did not believe Hairston to have been adequately trained. To defeat a Title VII defendant's summary judgment

motion, a plaintiff must demonstrate pretext as to all of the defendant's proffered neutral explanations, not just some of them. Kirk v. Small, No. 03-5360, 2004 WL 1249294, at *1 (D.C. Cir. June 7, 2004); Hicks v. Gotbaum, 828 F. Supp. 2d 152, 162 (D.D.C. 2011); Stover v. Safeway, Civil Action No. 04-490 (RCL), 2005 WL 1528698, at *5 (D.D.C. April 25, 2005). Hairston has not done so here. "If the employer's stated belief about the underlying facts is reasonable in light of the evidence, . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 495 (D.C. Cir. 2008); see also Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (stating that an employer prevails if it "honestly believes in the reasons it offers"). The GPO's motion for judgment on the first count will be granted.

II. DENIAL OF TRAINING

In his second count, Hairston alleges that the GPO discriminated against him based on his race by denying him the training opportunity in Georgia. (Am. Compl. ¶¶ 84-87.) In his third count, Hairston alleges that the GPO retaliated against him for complaining about the GPO's alleged discrimination by denying him the opportunity to go to Georgia for training. (Am. Compl. ¶¶ 88-90.) The GPO argues that denying this particular training was not an adverse employment action because Hairston had already

-12-

been trained on the two-color press and on presses similar to and with even more units than four-color presses.  (Def.'s Mem. at 20-22.)  The GPO also argues that it had a legitimate, non-discriminatory reason to not provide the Georgia training to Hairston - - that Hairston did not respond on his training survey form that he wanted that training.  (Def.'s Mem. at 22-23.)[5]  Hairston disagrees, arguing that he did want to receive the training and that Daniel harbored animus toward him.  (Pl.'s Opp'n at 29-43.)

"The elements of a claim of retaliation are that the plaintiff engaged in a statutorily protected activity, the employer treated the plaintiff adversely, and a causal connection existed between the two."  Winston, 712 F. Supp. 2d at 11 (citing Wiley v. Glassman, 511 F.3d 151, 155 (D.C. Cir. 2007) and Rochon v. Gonzales, 438 F.3d 1211, 1216-20 (D.C. Cir. 2006)).  Filing an EEO complaint is a statutorily protected activity under Title VII.  See Pierce v. Mansfield, 530 F. Supp. 2d 146, 160 (D.D.C. 2008).  Denying training opportunities can, in certain circumstances, rise to the level of an adverse employment action. Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001) (citing 42 U.S.C. § 2000e-2(d)).  However, "denial of training opportunities is [actionable only] if there is a

---

[5] The GPO seeks to deflect from itself any blame for Daniel's conduct by claiming that he conducted the training survey acting in his capacity as a Union representative.

resultant 'material change in . . . employment conditions, status, or benefits.'" <u>Dorns v. Geithner</u>, 692 F. Supp. 2d 119, 133 (D.D.C. 2010) (quoting <u>Lester v. Natsios</u>, 290 F. Supp. 2d 11, 29 (D.D.C. 2003)).  A claim of discriminatory denial of training opportunities based on "'marginal distinctions with uncertain consequences'" does not constitute an adverse employment action. <u>Freedman</u>, 255 F.3d at 845.

Here, assuming that Daniel conducted the survey at the behest of GPO management and that Daniel maintained a negative opinion of Hairston (<u>see</u> Pl.'s Opp'n, Ex. 32 at 2), Hairston has not demonstrated that the denial of this particular training opportunity was an adverse employment action.  Hairston admitted in his deposition that before the Georgia training was offered he had already received two-color press training and training on presses similar to the four-color press.  (<u>See</u> Def.'s Mem., Ex. 1, at 104-108.)  Nor has Hairston shown that between April 2009 when the first session of the Georgia training began, and October 2009 when he was next surveyed about training opportunities he wanted, positions were advertised for two-color or four-color presspersons in the Press Division or for Second Offset Presspersons that he would have been qualified for only if he had received the training in Georgia.  Moreover, in October 2009, Hairston signed a second training survey in which he expressed no interest in training on two-color and four-color

-14-

presses. (Def.'s Mem., Ex. 23.) Hairston has presented no facts that rebut that the GPO thought Hairston did not ask for the training which it selected other employees to attend. Since Hairston has neither shown that he suffered an actionable adverse employment action nor rebutted the GPO's non-discriminatory reason for not sending him to the training in Georgia, judgment will be entered against Hairston on his second and third counts.

## CONCLUSION

Hairston has raised no genuine material issue to rebut the GPO's legitimate, non-discriminatory reasons discussed above for its decision not to promote him or send him to training. Nor has Hairston shown that denying him the training opportunity in Georgia constituted an adverse employment action. GPO is entitled to judgment as a matter of law, and judgment will be entered for the GPO. An appropriate order accompanies this memorandum opinion.

SIGNED this 16th day of January, 2013.

                                      /s/  
                                RICHARD W. ROBERTS  
                                United States District Judge